UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH D. THOMPSON,<br>    *Plaintiff*,<br><br>v.<br><br>CITY OF BRIDGEPORT and JOHN DOE #1,<br>    *Defendants*. | NO. 3:25-CV-1220 (KAD)<br><br><br><br>NOVEMBER 6, 2025 |

**<u>MEMORANDUM OF DECISION RE: [25] DEFENDANTS' MOTION TO DISMISS THE [24] SECOND AMENDED COMPLAINT</u>**

Kari A. Dooley, United States District Judge:

Plaintiff Joseph Thompson, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants City of Bridgeport and John Doe #1, alleging that on or about April 7, 2025, Defendants violated his rights under the First and Fourth Amendments to the United States Constitution.  *See* Second Amended Complaint ("SAC"), ECF No. 24.  On August 26, 2025, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing principally that the SAC is procedurally improper,[1] and that Plaintiff has not otherwise plausibly alleged any constitutional claims against Defendants.  *See* Defs. MTD, ECF No. 25.  For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.

---

[1] On August 11, 2025, the Court granted Plaintiff's Motion for Leave to File an Amended Complaint.  However, the SAC he filed thereafter on August 21, 2025 was *not* the proposed amended complaint attached to his motion. Defendants therefore seek dismissal of the SAC because it was filed without leave of Court. While technically correct, given Plaintiff's status as a *pro se* litigant, and because had he sought permission, it would likely have been granted, the Court will not dismiss the SAC on this basis.  Plaintiff is cautioned, however, that even as a *pro se* litigant, he is not exempt "from compliance with relevant rules of procedural and substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

**Allegations**

The following facts are taken from the SAC and accepted as true for the purpose of Defendants' Motion to Dismiss.

Plaintiff is a resident of Bridgeport, Connecticut. SAC at ¶ 3. On April 7, 2025, Plaintiff attended a Bridgeport City Council meeting, where he spoke publicly about police misconduct, and more specifically, the "killing of Dyshan Best by Bridgeport police." *Id.* at ¶ 6. After the City Council meeting, Plaintiff conducted a live broadcast via Facebook concerning the same issues regarding Dyshan Best and police misconduct. *Id.* at ¶ 7. Thereafter, Plaintiff was arrested by Bridgeport police, including John Doe #1. *See id.* at ¶ 8. During his arrest, John Doe #1 seized Plaintiff's cellphone, which had been used to conduct the live broadcast on Facebook. *See id.* The seizure of Plaintiff's cellphone was retaliatory, and was carried out due to Plaintiff's outspoken criticism of the Bridgeport Police Department ("BPD") and the City of Bridgeport regarding police brutality. *Id.* at ¶ 12. The cellphone was not listed on the "property sheet," and was "held outside proper inventory procedure." *Id.* at ¶ 9. Without access to his cellphone, Plaintiff was prevented from "accessing important materials necessary to defend himself in pending legal matters and to continue engaging in protected political speech." *Id.* at ¶ 11. Plaintiff was deprived of access to his cellphone "for an extended period of time," and when the phone was eventually returned, it was "corrupted and malfunctioning, rendering it unusable" thus forcing Plaintiff to replace the device. *Id.* at ¶ 10.

Plaintiff asserts claims for retaliation in violation of the First Amendment, and unreasonable seizure under the Fourth Amendment. *See id.* at pp. 1–2. Liberally construed, the SAC also attempts to assert a municipal liability claim against the City of Bridgeport, arising under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Id.* at ¶ 20. Plaintiff

seeks compensatory damages, punitive damages against John Doe #1, and declaratory relief. *See id.* at p. 2.

**Procedural History**

On June 3, 2025, Plaintiff filed his initial Complaint in the Superior Court of Connecticut for the Judicial District of Fairfield at Bridgeport, against Defendants the City of Bridgeport, the BPD, and Unknown Officers. *See* Compl., ECF No. 1-1. On July 31, 2025, Defendants removed the case to federal court. *See* ECF No. 1. On August 5, 2025, Plaintiff filed an Amended Complaint, asserting claims for violations of his civil rights under the First, Fourth, and Fourteenth Amendments, against Defendants the City of Bridgeport, the BPD, and John Doe #1. *See* Am. Compl., ECF No. 10. On August 6, 2025, Defendants filed a Motion to Dismiss the Amended Complaint. ECF No. 11. On August 7, 2025, Plaintiff filed an opposition to Defendants' Motion to Dismiss, as well as a Motion for Leave to File an Amended Complaint, which included a proposed Second Amended Complaint. *See* ECF No. 13. Plaintiff's proposed Second Amended Complaint sounded in three counts: (1) an unlawful seizure claim under the Fourth Amendment; (2) a due process violation under the Fourteenth Amendment; and (3) a *Monell* claim. *See* Proposed SAC, ECF No. 13-1.

On August 11, 2025, the Court granted Plaintiff's request, denied Defendants' Motion to Dismiss, and directed Plaintiff to file his proposed Second Amended Complaint. *See* ECF No. 15. On August 18, 2025, inexplicably, Plaintiff filed another opposition to Defendants' Motion to Dismiss. ECF No. 22. Then, on August 21, 2025, Plaintiff filed the SAC. SAC, ECF No. 24. On August 26, 2025, Defendants filed a Motion to Dismiss the SAC. Defs. MTD, ECF No. 25. Plaintiff has not filed any opposition to the instant Motion to Dismiss.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). Moreover, where a plaintiff proceeds *pro se*, the court must construe his pleadings liberally, and interpret the complaint to raise the strongest arguments it suggests. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

**Discussion**

In seeking to dismiss the SAC, Defendants principally argue that: (1) the SAC alleges no facts to support any claim arising under the First Amendment; (2) the seizure of Plaintiff's cellphone followed his lawful arrest, and therefore did not run afoul of the Fourth Amendment; (3) any claims arising from Defendants' failure to return Plaintiff's property, or the damage caused thereto, are not actionable under the Fourth Amendment; and (4) the SAC fails to sufficiently allege a *Monell* claim. Though Plaintiff has not filed any opposition to the instant Motion to

Dismiss, the Court has, where appropriate, considered the arguments advanced by Plaintiff in his opposition(s) to Defendants' prior Motion to Dismiss. *See* Pl. Opps., ECF Nos. 14, 22.

<u>Extrinsic Evidence</u>

As a threshold matter, the Court must first determine whether it may consider the exhibits attached to Defendants' Motion to Dismiss. "Generally, when considering a motion to dismiss, the Court's review is confined to the pleadings themselves, because to go beyond the allegations in the complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56." *Floyd v. Rosen*, No. 21-CV-1668 (KMK), 2022 WL 1451405, at *1 (S.D.N.Y. May 9, 2022) (citation and internal quotation marks omitted). Thus, "in deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)). "Moreover, where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).

Here, Defendants attach the following exhibits to their Motion to Dismiss: (1) a BPD Case Incident Report, dated July 24, 2025; (2) a BPD Inventory of Property Seized Without a Search Warrant worksheet, dated July 24, 2025; (3) a signed Affidavit and Application for Search and Seizure Warrant for Plaintiff's silver flash drive, dated April 10, 2025 (the "Flash Drive Application"); and (4) a signed Affidavit and Application for Search and Seizure Warrant for

Plaintiff's cellphone dated April 10, 2025 (the "Cellphone Application").[2] *See* MTD, ECF No. 25-2, Exhibit A. The documents provide both context for, and detail regarding, an investigation by the BPD into Plaintiff's allegedly threatening communications.

Defendants posit that these documents can be considered on a Rule 12(b)(6) motion because they are integral to the SAC. *See* Defs. Mem., ECF No. 25-1, at 6 n.22. The Court disagrees. While these documents may have evidentiary value with respect to Plaintiff's claims, they are not the basis upon which Plaintiff asserts those claims. The SAC makes no mention of an incident report or a search warrant, and indeed, it is clear that, in Plaintiff's view, his cellphone was seized not because of any underlying investigation into the purportedly threatening communications made and distributed using his cellphone, but rather, due to his outspoken (and constitutionally protected) criticism of the BPD. *See, e.g.*, *Hutson v. Notorious B.I.G., LLC*, No. 14-CV-2307, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (declining to consider extrinsic documents "because they [were] not referenced in the [complaint]"). Moreover, while the SAC specifically challenges the BPD's inventory of Plaintiff's cellphone, the BPD Inventory of Property worksheet attached to the Motion to Dismiss only references Plaintiff's cellphone *case*, and is dated July 24, 2025, months after the initial seizure. In short, Defendants' exhibits are not integral to the SAC and cannot be considered by the Court in adjudicating the Motion to Dismiss.

That said, it is well-settled that "courts may take judicial notice of public documents and matters of public record, including documents filed in another court, *not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings*."

---

[2] Defendants also attach as Exhibit B a printout of the "Pending Case Detail" page from the State of Connecticut Judicial Branch website, pertaining to Plaintiff's underlying criminal case. The information contained therein is publicly accessible online, and is therefore plainly a matter of public record subject to judicial notice. The "Pending Case Detail" page reveals that the offense for which Plaintiff was arrested purportedly occurred on April 4, 2025. However, neither the fact of Plaintiff's arrest nor the reasons therefor form the basis of Plaintiff's constitutional claims.

*Floyd*, 2022 WL 1451405 at *2 (cleaned up) (emphasis added) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).  The Court can and will therefore take judicial notice of the fact that applications for search warrants were made as to Plaintiff's cellphone and flash drive; that search warrants were subsequently issued; and that, in turn, searches of Plaintiff's cellphone and flash drive were undertaken.  *See, e.g.*, *id.* (citing *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014) ("In deciding a motion to dismiss, a court may take judicial notice of public records, including [a warrant application].")).  To be clear, the Court does not take judicial notice of such documents for the truth of their content, to include any statements made by the Affiant BPD officers.  Nor will the Court take judicial notice of the BPD Case Incident Report or the BPD Inventory of Property worksheet, because Defendants do not represent that those documents were filed in another court or are otherwise a matter of public record.  *See id.* (citing *Alvarez*, 95 F. Supp. 3d at 398 (declining to take judicial notice of incident report not filed in court)).

       First Amendment – Retaliation

      The Court next turns to Plaintiff's allegations.  "A plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  *Galgano v. County of Putnam*, No. 16-CV-3572 (KMK), 2024 WL 1623401, at *104 (S.D.N.Y. Apr. 15, 2024) (quotation marks omitted) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).

      Liberally construed, and drawing all reasonable inferences in Plaintiff's favor, the allegations set forth in the SAC satisfy all three prongs of a valid First Amendment retaliation claim.  First, the speech at issue—*i.e.*, Plaintiff's criticism of the BPD and the shooting of Dyshan

Best—was undoubtedly protected.[3] *See Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018) (the Supreme Court "has recognized the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights") (internal quotation marks omitted); *see also 303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ("Speech conveyed over the internet, like all other manner of speech, qualifies for the First Amendment's protections."). Likewise, the Court concludes that at this stage, Plaintiff has plausibly alleged that the ensuing seizure of his cellphone incident to his arrest by the BPD was a sufficiently adverse action. *See Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) (adverse action must be "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights"); *see, e.g.*, *Khadafy v. Derby Police Dep't*, No. 3:21-CV-465 (KAD), 2021 WL 1390377, at *4 (D. Conn. Apr. 13, 2021) (seizure of Plaintiff's property "appear[ed] serious enough to constitute adverse action[]"). Finally, Plaintiff has adequately alleged that the seizure of his cellphone was retaliatory for his outspoken criticism of the BPD and other City of Bridgeport officials earlier that same day. *See Karol v. City of New York*, 396 F. Supp. 3d 309, 317 (S.D.N.Y. 2019) ("temporal proximity between the plaintiff's testimony at the City Council hearing and the [adverse action] support [the] inference [of retaliatory intent].").

Defendants argue, based on sworn statements in the Cellphone Application, that Plaintiff's arrest (and the related seizure of his cellphone) was made pursuant to an arrest warrant, and was

---

[3] Defendants urge that death threats are not protected by the First Amendment. *See* Defs. Mem. at 10. The Court agrees. *See Counterman v. Colorado*, 600 U.S. 66, 72 (2023) ("True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection. And a statement can count as such a threat based solely on its objective content."). But Defendants misapprehend Plaintiff's allegations. Plaintiff's First Amendment retaliation claim is not premised on the threatening messages Plaintiff allegedly posted on social media following the death of Dyshan Best, even though it appears that his April 7, 2025 arrest followed a pre-existing BPD investigation into such conduct. Accepting his allegations as true, *see Interworks*, 604 F.3d at 699, Plaintiff alleges only that John Doe #1's seizure of his cellphone was retaliation for his outspoken criticism of the BPD at a City Council meeting, and during a live broadcast via Facebook, both of which occurred earlier in the day on April 7, 2025. There is no suggestion in the SAC that Plaintiff's public remarks on April 7, 2025 included death threats.

the culmination of a police investigation into his threatening social media messages, as opposed to retaliation for any protected speech occurring on April 7, 2025. *See* Defs. Mem at 9–10. However, as discussed above, the Court cannot consider this evidence when adjudicating this Rule 12(b)(6) motion. *See Glob. Network*, 458 F.3d at 157. And the SAC itself lacks any indication that Plaintiff's arrest and/or the seizure of his cellphone resulted from a BPD investigation, or an arrest warrant. In sum, Plaintiff has sufficiently alleged that the seizure of his cellphone was retaliatory.

For all of these reasons, the Court concludes that the SAC plausibly alleges a First Amendment retaliation claim against Defendant John Doe #1.

Fourth Amendment – Unreasonable Seizure

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" by government actors. U.S. Const. amend. IV. "A 'seizure' of property under the Fourth Amendment occurs when there is some meaningful interference with an individual's possessory interest in that property." *Martell v. City of St. Albans, Vermont*, 441 F. Supp. 3d 6, 19 (D. Vt. 2020) (citing *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (internal quotation marks omitted)). Thus, "to claim an unconstitutional seizure, a party must first assert a possessory interest in an item seized." *Newsome v. Bogan*, 617 F. Supp. 3d 133, 146 (W.D.N.Y. 2022) (citing *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997)). From there, "to determine whether a seizure is unreasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified [the] particular sort of seizure." *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (*per curiam*) (citation and alterations omitted). The Second

Circuit has "long held that the plaintiff has the burden to prove that a seizure was unreasonable." *Id.* (citation omitted).

Here, Plaintiff alleges that his cellphone was seized during his arrest on April 7, 2025, and that thereafter, the cellphone was "not listed on the property sheet and was held outside proper inventory procedures." *See* SAC at ¶ 9. For these reasons, Plaintiff alleges that the seizure of his cellphone was "without lawful justification," and therefore, unconstitutional. *Id.* at ¶ 19. Though Plaintiff has alleged a valid possessory interest in his cellphone, he has not adequately alleged that John Doe #1's seizure of Plaintiff's cellphone was unreasonable under the Fourth Amendment. To the contrary, it is well-established that officers are permitted to search an individual incident to his lawful arrest, and seize items in that individual's possession. *See United States v. Chowdhury*, No. 23-CR-278 (NRM), 2025 WL 2987917, at *11 (E.D.N.Y. Oct. 22, 2025) ("Interests in officer safety and evidence preservation that are typically implicated in arrest situations allow an officer to properly search an individual's person upon arrest.") (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)); *see, e.g.*, *United States v. Handler*, No. 23-CR-4 (JHR), 2023 WL 2584217, at *3 (S.D.N.Y. Mar. 21, 2023) (seizure of cell phones that on the defendants' persons at the time of their arrest fell within the search incident to arrest exception). And notably, Plaintiff has not challenged the lawfulness of his underlying arrest, or claimed that the cellphone was not seized as a result of the search incident to that arrest. For these reasons, Plaintiff has failed to adequately state a Fourth Amendment violation in connection with the seizure of his cell phone.[4]

---

[4] The SAC also alleges that Plaintiff's cellphone was improperly inventoried and subsequently damaged while in police custody. *See* SAC at ¶¶ 9–10. However, such allegations appear to be raised in the context of Plaintiff's municipal liability claim, not his Fourth Amendment claim. *See id.* at ¶ 20 (asserting *Monell* claim arising from "municipal policy, custom, or failure to properly train and supervise officers regarding the handling of property"). As discussed below, the SAC fails to adequately state a municipal liability claim.

Municipal Liability – *Monell*

In naming the City of Bridgeport as a Defendant, Plaintiff necessarily asserts a municipal liability claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court determined that "[l]ocal governing bodies . . . can be sued directly under [Section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

A "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section 1983] on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section 1983]." *Id.* at 694. A plaintiff may demonstrate a government "policy or custom" by "alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gomez v. City of Norwalk*, No. 3:15-CV-1434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (internal quotations omitted).

The SAC alleges in conclusory fashion that because the seizure of Plaintiff's cellphone "resulted from municipal policy, custom, or failure to properly train and supervise officers regarding the handling of property," the City of Bridgeport is liable pursuant to *Monell*. SAC at ¶ 20. Such conclusory allegations are inadequate to state a claim under *Monell*. It is well-settled that a "[p]laintiff cannot merely allege the existence of a municipal policy or custom . . . he must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted) (collecting cases). And here, the SAC does not identify any other instances of the City of Bridgeport unlawfully seizing property or otherwise failing to adequately safeguard it, much less the precise municipal policy or custom that led to the allegedly unlawful seizure at issue here. Moreover, insofar as Plaintiff has failed to state a Fourth Amendment violation arising from John Doe #1's seizure of his cellphone, no municipal liability is pled. It is well-settled that "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (where a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").[5] For the foregoing reasons, Plaintiff's purported *Monell* claim must be dismissed.

---

[5] Though Plaintiff's First Amendment claim has been adequately alleged, it cannot form the basis for Plaintiff's *Monell* claim. Indeed, it is clear from the SAC that Plaintiff's *Monell* claim stems from the BPD's post-arrest handling/safeguarding of his cellphone, and does not derive from any purported municipal policy, practice, or custom of retaliating against individuals for exercising their First Amendment freedoms. *See Monell*, 436 U.S. at 691; *Brown v. City of New York*, No. 13-CV-6912 (TPG), 2016 WL 616396, at *2 (S.D.N.Y. Feb. 16, 2016) (underlying constitutional harm suffered must be a result of the purported municipal policy or custom).

**Conclusion**

For all of the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. Plaintiff's unreasonable seizure and *Monell* claims are **DISMISSED with prejudice**. Accordingly, the Clerk of Court is directed to terminate Defendant City of Bridgeport.

This case shall proceed on Plaintiff's First Amendment retaliation claim only against Defendant John Doe #1 in his individual capacity. Although counsel has appeared for John Doe #1, he remains as yet unidentified on the docket, though it appears from the Exhibits attached to the Motion to Dismiss that Officer William Reilly was the officer who recovered/seized Plaintiff's cellphone. If Officer Reilly is John Doe #1, or if counsel is otherwise aware of the identity of John Doe #1, counsel is directed to file a Notice on the docket reflecting same. If counsel is unaware of the identity of John Doe #1, counsel is directed to promptly undertake efforts to ascertain the identity of Defendant John Doe #1, and thereafter on or before **December 5, 2025**, provide the Court with the information necessary to amend the docket. *See Stephen v. Hall*, No. 19-CV-2225 (VF), 2022 WL 6765791, at *1 (S.D.N.Y. Oct. 11, 2022).

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of November 2025.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE